```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x

In re:                              :

ALFRED R. McCRORY                   :    BK No. 10-10461
         Debtor                          Chapter 7

- - - - - - - - - - - - - - - - - -x
CHRISTOPHER P. SACHUK               :
         Plaintiff

v.                                  :    A.P. No. 10-1037

ALFRED R. McCRORY                   :
         Defendant
- - - - - - - - - - - - - - - - - -x
```

### DECISION AND ORDER DENYING DISCHARGE

APPEARANCES:

    Christopher M. Lefebvre, Esq.
    Attorney for Plaintiff
    CLAUDE F. LEFEBVRE, CHRISTOPHER M. LEFEBVRE, PC
    2 Dexter Street, Box 479
    Pawtucket, Rhode Island 029862

    Stacy B. Ferrara, Esq.
    Attorney for Defendant/Debtor
    LAW OFFICE STACY BETTEZ FERRARA PC
    505 Tiogue Avenue, Suite B
    Coventry, Rhode Island 02816

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK 10-10461; A.P. No. 10-1037

Heard on Plaintiff Christopher P. Sachuk's ("Sachuk") Complaint to Deny Debtor Alfred R. McCrory's ("McCrory") Discharge. Sachuk alleges that under 727(a)(4)(A), discharge should be denied on the grounds that: (1) McCrory knowingly and fraudulently made a false oath in not disclosing a 26 foot 1987 Thompson power boat as "Property Held for Another Person" in his Statement of Financial Affairs; and (2) under 727(a)(2)(A) for transferring the boat to his son with "intent to hinder, delay or defraud" the Plaintiff. For the reasons set forth below, McCrory's Discharge is **DENIED.**

## BACKGROUND AND FACTS

This dispute has clear connections to a divorce action between the McCrory's former son-in-law (Sachuk) and his daughter, which was litigated in the Rhode Island Family Court in 2006. During the divorce court proceedings, Sachuk filed a third-party complaint against McCrory, alleging that McCrory had promised him an ownership interest in property located on Lafayette Road, in North Kingstown, Rhode Island, and that Sachuk had made mortgage payments and improved the property in reliance on this promise.

In September 2008, while the Family Court litigation was pending, McCrory transferred property in Florida to another son, Stephen McCrory. In January 2009, Stephen transferred the Florida property back to his father. On February 6, 2009, a Consent

1

BK 10-10461; A.P. No. 10-1037

Judgment was entered in the Family Court, wherein McCrory was ordered to pay Sachuk $60,000 on or before May 5, 2009.

On February 23, 2009, and on several other occasions, McCrory made an offer of settlement to Sachuk. This offer consisted of the opportunity to buy McCrory's Florida mobile home for $15,000. McCrory claimed the property was worth $75,000.[1] It should be noted that the mobile home was in a "55 and older" community. Sachuk refused this and various other offers to settle his claims against McCrory.

The February 2009 Consent Judgment was not satisfied by May 5, 2009, as ordered, and Sachuk promptly brought a contempt proceeding against McCrory in the Family Court. At a hearing on September 2, 2009, Family Court Justice Raymond Shawcross ordered McCrory to: apply for financing with at least five different lending institutions, apply for an FHA Reverse Mortgage, and list his real estate in Florida for sale. These orders were all made, obviously, to force the payment of Sachuk's claim, which McCrory was trying so desperately to avoid.

Two weeks after that hearing, McCrory consulted with bankruptcy counsel. On October 5, 2009, McCrory transferred his boat to his other son Jonathon, in partial satisfaction of a debt. Jonathon had lent his father a total of $7,000 but had not directly

---

[1] The property was eventually sold by the Trustee for $23,000.

2

BK 10-10461; A.P. No. 10-1037

or indirectly sought payment.  During all of McCrory's dilatory posturing, the boat remained on the Debtor's property until May 2010.

In November 2009, the parties appeared again before Judge Shawcross, this time on Sachuk's Motions to Adjudge in Contempt and to Appoint a Commissioner.  Judge Shawcross observed that McCrory "didn't want to pay him [Sachuk] five cents," (Ex. 14, Pg. 12, Ln. 18-19) and granted Sachuk's Motion to Appoint a Commissioner, but stayed that appointment until February 1 to give McCrory even more time to comply with the September 2 judgment.  On February 1, 2010, McCrory filed this Chapter 7 case.[2]

In his Statement of Financial Affairs, in answer to Question 14, "Property Held for Another," McCrory listed some rent security deposits, but failed to mention the boat which he had transferred to his son, and which was still McCrory's property.  (Ex. 26, Question 14).  The transfer was, however, scheduled elsewhere in the Statement of Financial Affairs. (Ex. 26, Question 3.)

In May 2010, four months after he filed for bankruptcy, McCrory sold the boat to a third party "on behalf of his son" for $4,500, and applied the proceeds to the balance of his debt to his son Jonathon.  In June 2010, Sachuk filed the within complaint to

---

[2] In hindsight, which, of course, is always the most reliable indicator of anything, this filing should not surprise even the most jaded observer of the art of debt evasion.

3

Document Page 5 of 11

BK 10-10461; A.P. No. 10-1037

deny discharge, alleging: (a) that McCrory had made a false oath by not listing the boat as "Property of Another," and (b) that the transfer of the boat to his son was done by McCrory to "hinder, delay or defraud" Sachuk.

## DISCUSSION

### Count I, False Oath

In Count I, Sachuk alleges that McCrory "knowingly and fraudulently made a false oath," thus requiring denial of discharge under 11 U.S.C. § 727(a)(4)(A). (Complaint at 13). Without question, a complaint seeking denial of discharge is not to be taken lightly, and "[t]he reasons for denying a discharge ...must be real and substantial, not merely technical and conjectural." *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987) (*citing Dilworth v. Boothe*, 69 F.2d 621, 624 (5th Cir. 1934)). To deny a discharge under 727(a)(4)(A), the Court must find that the debtor "knowingly and fraudulently made a false oath," and that the oath must relate to "a material fact." *Tully,* 818 F.2d at 110. Plaintiff has the initial burden of proof, but once it "reasonably appears that the oath is false," the burden shifts to the Debtor to show that he/she has not committed the alleged offense. *Id.*

Sachuk relies on McCrory's Statement of Financial Affairs (Ex. 26) as proof that the false oath was made knowingly and fraudulently. Question 14 plainly asks for a list of "all property

4

                                              BK 10-10461; A.P. No. 10-1037

owned by another person that the debtor holds and controls." McCrory did not disclose the boat which he transferred to his son but which remained on his (McCrory's) property. Interestingly, McCrory did disclose rental security deposits held in the names of tenants. Under cross-examination, McCrory stated that he did not "hold title" to the boat as the reason why he did not list the boat in response to Question 14 in the Statement of Financial Affairs. The disclosure of the rental security deposits is compelling evidence that McCrory understood the difference between ownership (as represented by title) versus possession and control. Further, as McCrory is a former Realtor, it would be naive to buy the assertion that he does not understand the distinction between ownership and possession. This contention is, at best, disingenuous, along with most of McCrory's sworn testimony. As to all of his relevant testimony, McCrory is not credible, and this Court thus has no difficulty in finding the answer to Question 14 to constitute a false oath.

It is also clear that the false oath concerned a material matter. A matter is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property," and the transfer of property within one year of the bankruptcy filing is material, as it concerns the

5

BK 10-10461; A.P. No. 10-1037

"existence and disposition of property."  *Tully*, at 111 (*citing In Re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)).

In response to the allegation that he acted with fraudulent intent, McCrory references Question 3 of the same Statement of Financial Affairs in which he listed the transfer of the boat to his son "in partial satisfaction of debt," and states that, if he were attempting to hide the existence or disposition of property, it is unlikely that he would have listed the boat in the same document.  In short, he argues that although the answer to Question 14 is a false statement related to a material matter, it is unclear whether that oath was made knowingly and fraudulently.  Because the same relief (i.e., denial of discharge) is sought in Count II, where the fraudulent intent is clear, it is not necessary for this Court, for purposes of Count I, to determine whether McCrory's false oath in Question 13 was knowing and fraudulent.

### Count II, Hinder or Delay

In Count II, Sachuk claims that McCrory's transfer of the boat to his son was done with intent to hinder, delay "and or defraud," and as such was a violation of 11 U.S.C. § 727(a)(2)(A).  The First Circuit Bankruptcy Appellate Panel ("BAP") has held that to deny discharge under 727(a)(2)(A), the movant must prove four elements by a preponderance of the evidence:

> 1) the debtor transferred, removed, concealed, destroyed or mutilated,

6

BK 10-10461; A.P. No. 10-1037

> 2) his or her property,
> 3) within one year of the bankruptcy petition's filing,
> 4) with the intent to hinder, delay or defraud a creditor.

*In re Barry,* 431 B.R. 533, 538 (Bankr. D.R.I. 2010) (*partially rev'd on other grounds*, 451 B.R. 654 (1st Cir. B.A.P. 2011)).

The first three elements are not in dispute. McCrory transferred the boat to his son on October 5, 2009. Four months later, McCrory filed this Chapter 7 bankruptcy case.

The fourth element "must be read in the disjunctive;" where there is intent to hinder or delay a creditor, 727(a)(2) "does not require a finding of intent to defraud." *Id.* at 540. The issue, as Sachuk's counsel correctly points out, is whether McCrory made the transfer with intent to hinder or delay Sachuk. It is not necessary for the court to find an intent to defraud.

Such intent must be actual, but can be inferred "from the facts and circumstances surrounding [the debtor's] actions." *In re Pearlman,* 413 B.R. 27, 31 (Bankr. D.R.I. 2009)(*citing In re Marrama,* 331 B.R. 10 (D. Mass. 2005), and the trier of fact is not required to rely on a hypothetical crystal ball to divine McCrory's intent. Instead, he or she may draw real inferences from real evidence. In *Barry,* Judge Boroff considered several factors (or, "badges") to determine whether the debtor intended to hinder or delay creditors. *Barry,* 431 B.R. at 540. These factors include:

> (1) whether the transaction is conducted at arms-length;

7

>   (2) whether the debtor is aware of the existence of a significant judgment or overdue debt;
>   (3) whether a creditor is in hot pursuit of its judgment/claim and whether the debtor knows this; and
>   (4) the timing of the transfer, relative to the filing of the petition.

*Id.*

The first factor is easily dispensed with; the boat was transferred from father to son, and thus to an insider, i.e., not an arms-length transaction. Similarly, the second factor has been established beyond question. McCrory undeniably knew that the Family Court Consent Judgment required him to pay Sachuk $60,000 on or before May 5, 2009. On September 2, 2009, the Rhode Island Family Court ordered McCrory to take steps to satisfy that obligation, and I also find that McCrory absolutely knew of the existence of a significant judgment staring him in the face. In June 2009, Sachuk began contempt proceedings in the Family Court, based on McCrory's failure to satisfy the judgment. There is no other way to characterize this scenario than that a creditor was in "hot pursuit" of a judgment, and that McCrory knew it.

The final element, "the timing of the transfer, relative to the filing of the petition" requires drawing some inferences, but the circumstances of this case are such that no great leap is required to connect the dots. The October 5, 2009 transfer of the boat occurred while contempt proceedings were pending, and after the Family Court made crystal clear, on September 2, 2009, that

8

BK 10-10461; A.P. No. 10-1037

McCrory would have to comply with the judgment. Not coincidentally, McCrory first consulted bankruptcy counsel on that same day. One month later, he transferred the boat to his son, shortly before filing this case.

In this Court's opinion, all four badges point inescapably to the intent to hinder or delay. It is worth noting, as well, that "while just one of the 'badges' of intent to impermissibly hinder or delay is sufficient for §727(a)(2) purposes, 'the accumulation of several factors indicates strongly that [a] debtor possessed the requisite intent.'" *Id.* at 540 (*citing In re McGalliard*, 183 B.R. 726, 733 (Bankr. M.D. N.C. 1995).

McCrory's transfer of the boat to his son in partial satisfaction of an obligation for which the son was not pressing for payment, and then selling the boat to a third-party on behalf of the son, while Sachuk was being frustrated at every turn in his attempt to collect from McCrory, is itself more than sufficient evidence. However, when viewed in the context of McCrory's other actions (transferring the Florida home to one son, then taking it back shortly thereafter, failing to seek financing until the eleventh hour, after having been specifically ordered to do so by the Family Court), as well as his transparent and consistent lack of candor while testifying before this Court, the finding that McCrory intended to hinder and delay Sachuk is a no brainer.

BK 10-10461; A.P. No. 10-1037

It is also worth noting that Justice Shawcross, who had the best opportunity to evaluate McCrory's credibility during the extended proceedings before him, has bluntly expressed his own thoughts about McCrory's intent. After noting the tortuous travel of the case before him, Justice Shawcross said to McCrory, "I mean the truth be known, Al, let's say it the way it is. Let's say it the way it is. Tell it honestly now. You don't want to pay him 5 cents." This Court readily adopts Justice Shawcross's assessment of McCrory's motives, and finds for the Plaintiff on Count II.

In summary, I find that McCrory transferred the boat to his son four months prior to filing bankruptcy with the intent to hinder or delay Sachuk's collecting a $60,000 judgment. As stated earlier in this opinion, because the same relief is sought in Count I, it is not necessary to rule on the 727 (a)(4)(A) issue. On Count II, because McCrory violated § 727(a)(2)(A), discharge is **DENIED**.

Enter:

_____
Arthur N. Votolato
U.S. Bankruptcy Court

Entered on docket: 11/29/11

10